Edward F. **HOGGE**, Plaintiff,

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**H & S CORPORATION, Third-Party Defendant.**

Civ. A. No. 2–71–NN.

United States District Court, E. D Virginia, Newport News Division.

May 31, 1972.

Israel Steingold, Norfolk, Va., for plaintiffs.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendant and third-party plaintiff.

William E. Baggs, Norfolk, Va., for third-party defendant.

## OPINION AND ORDER

KELLAM, District Judge.

Edward F. Hogge instituted this action against the United States of America pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2674, seeking monetary damages for injuries sustained as a result of a fall at Langley Air Force Base, Hampton, Virginia. The United States has in turn impleaded H & S Corporation (H & S), asserting contractual provisions for indemnification.

### I

On June 13, 1969, the United States entered into a contract with H & S for the performance of certain work at Langley Air Force Base. The contract included replacement of water lines along a pier leading out to a boathouse which was operated and maintained by Air Force Special Services for recreational purposes. H & S engaged the plaintiff to perform work on this particular phase of the contract.[1]

On November 3, 1969, the plaintiff and his nephew drove the plaintiff's truck to the vicinity of the pier, arriving at approximately 9:00 a. m. After having parked his truck on the paved area adjacent to the pier, plaintiff removed his tools and equipment and commenced to cut the old pipe from the hangers running the length of the pier. Once removed, the old pipe was placed aside in an area adjacent to the pier. Plaintiff and his nephew next secured a twenty-one foot length of new three inch pipe from the boathouse at the head of the pier, placed same on their shoulders and returned to the foot of the pier. Upon reaching this location, they rested the pipe on the pier's railing. Hogge walked around the end of the pier and placed one end of the pipe on his left shoulder, with his nephew doing likewise with the other end of the pipe. Plaintiff was walking backwards off the pavement with the pipe still on his shoulder, when his foot slipped in a hole and he fell. Instead of walking or moving back in a straight line running with the pier, or parallel or nearly so with the line of the pier, plaintiff walked backwards in a 45 to 90 degree angle from the end of the pier. If he had walked back in a straight line from the end of the pier and parallel to the pier, he would have walked on the pavement. Instead, he walked at a 45 to 90 degree angle from the end of the pier on the rough terrain near the abandoned white stucco building behind the Dempster Dumpmaster. Plaintiff's Exhibits 6–7–9–10 and 11 are photographs of the area and clearly demonstrate the area in question.

### II

Pursuant to the provisions of Title 28 U.S.C.A. § 2674, the liability of the United States in this action is to be determined "in the same manner and to the same extent as a private individual under like circumstances." Hence, in determining the issue of liability, the law of Virginia is to be applied. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 77 S.Ct. 186, 1 L. Ed.2d 189 (1956); Murray v. United States, 329 F.2d 270 (4th Cir. 1964); Jennings v. United States, 374 F.2d 983

---

1. Hogge Plumbing, by whom plaintiff was employed, agreed to install the water line. Because Hogge Plumbing could not qualify as a sub-contractor, H & S Corporation employed them to do the work and carried the various persons performing labor for Hogge Plumbing on its payroll as its employees.

(4th Cir. 1967); United States v. Price, 288 F.2d 448 (4th Cir. 1961).

### III

The parties are in disagreement as to the legal status of plaintiff upon the premises. Plaintiff asserts he was an "invitee," but the third-party defendant asserts he was a "licensee." If he was an invitee, did the invitation to work extend to the place where plaintiff was walking when he fell?

▪ An employee of the owner's contractor who is upon the premises performing work for the contractor in accordance with the terms of the contract is there as an invitee at the place where he is authorized to be. Dillingham v. Smith-Douglass Co., 261 F.2d 267 (4th Cir. 1958); Glasscock v. United States, 207 F.Supp. 318 (E.D.Va.1962), affirmed 323 F.2d 589 (4th Cir. 1963); Kalopodes v. Federal Reserve Bank of Richmond, 367 F.2d 47 (4th Cir. 1966); Trimyer v. Norfolk Tallow Co., 192 Va. 776, 66 S.E.2d 441; Davis Bakery v. Dozier, 139 Va. 628, 124 S.E. 411. If he is at a place beyond the invitation or where the invitee is not reasonably expected to go in the performance of his work, as to such an area he is a "licensee." Dillingham v. Smith-Douglass Co., supra; Glasscock v. United States, supra; Stancil v. United States, 267 F.2d 268 (4th Cir. 1959); Trimyer v. Norfolk Tallow Co., supra; Davis Bakery v. Dozier, supra; Smith v. Wiley-Hall Motor, 184 Va. 49, 34 S.E.2d 233. The general rule is that no duty is imposed upon the owner or occupant to keep his premises in a safe and suitable condition for the use of a licensee, and so far as the condition of the premises is concerned the owner or occupant is only liable for any willful or wanton injury that may be done to him. Bradshaw v. Minter, 206 Va. 450, 143 S.E.2d 827 (1965), and authorities there collected.

▪ As to an invitee, the owner or occupant of the premises owes him "the duty to devote ordinary care, including a warning to him of any known dangers, to see to it that the premises were in a reasonably safe condition for his enjoyment within the bounds of the invitation." Dillingham v. Smith-Douglass Co., supra [261 F.2d 269]. "In order to hold the owner of property liable for injuries sustained by an invitee due to the unsafe condition of the premises, it must be shown that the owner had knowledge of the alleged unsafe condition, or that it had existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it." Cannon v. Clarke, 209 Va. 708, 167 S.E.2d 352, 355 (1969); Culpepper v. Neff, 204 Va. 800, 804, 134 S.E.2d 315, 318 (1964). "To sustain a charge of negligence, the unsafe condition relied on must be one of which the owner knew or should have known, and the invitee did not know and could not reasonably have discovered." Glasscock v. United States, supra.

Both Glasscock v. United States and Dillingham v. Smith-Douglass Co., supra, held that as the government was not the plaintiff's employer, the doctrine of providing a safe place to work was not applicable. Unquestionably, in the case at bar the United States was not the employer of the plaintiff, Hogge.

If the plaintiff was a mere "licensee," clearly there is no liability. If we assume plaintiff was an invitee to the area where he was injured, he is still not entitled to recover under the facts of this case.

▪ The United States was not an insurer of the plaintiff's safety, whether an invitee or licensee. Gauldin v. Virginia Winn-Dixie, Inc., 370 F.2d 167, 169 (4th Cir. 1966). To recover, plaintiff must establish that the United States was guilty of negligence and that such negligence was a proximate cause of the injury. United States v. Moran Towing and Transportation Co., 409 F.2d 961 (4th Cir. 1969); Glasscock v. United States, supra. Too, "a negligent failure to inspect does not result in the imposition of liability unless it is established that a reasonable inspection would

have disclosed the presence of the defect which caused the harm." United States v. Moran Towing and Transportation Co., supra [409 F.2d 963]. Given an invitee status from beginning to end, the evidence fails to show plaintiff was not accorded his every due. Knowledge of the United States of the existence of the hole in the ground is nowhere shown in the evidence. Nowhere does the evidence disclose it was discoverable by ordinary inspection; nor does the evidence establish how long the hole had existed. Plaintiff had earlier that day walked over the area and reported he did not discover the hole. Suggestion was made in the evidence that a former pier piling or bulkhead piling was in the bottom of the hole, and probably the top had decayed, forming the hole, or the dirt had eroded away from the top of such a piling. But what created the hole is only speculation.

The area where the hole was found was not utilized for access to the pier, or the swimming pool,[2] nor for any other specified purpose. The stucco house in the area had been abandoned. It was in fact a part of the riverfront or marshy area which was being filled in.

Plaintiff's testimony clearly establishes the hole was covered by grass and not easily discoverable. Plaintiff and his nephew who was with him at the time of the accident, each testified they were unable to see the hole because of the grass in the area, the hole being covered by the grass.

■ Under the facts of this case the United States was not negligent toward plaintiff. It neither knew of the defect, nor with the requisite attentiveness could have discovered it in time to save plaintiff from the accident and injury.[3] In this case, an opposite finding would convict plaintiff of contributory negligence, which is a bar to his right of recovery. If the United States was negligent in not observing or locating the hole, then plaintiff likewise was. Dillingham v. Smith-Douglass Co., *supra*. That is to say, if the hole was not covered by grass but was open and obvious, there would have been no duty upon the United States to warn the plaintiff of the existence of the condition.

**IV**

Plaintiff has failed to sustain his burden, and his action is therefore dismissed.

---

2. The swimming pool is enclosed by a fence and its entrance is 100 yards from the area where the hole is located.

3. Actual or constructive notice of the defect must be established by affirmative proof in order to render the owner liable. Culpepper v. Neff, 204 Va. 800, 134 S.E. 2d 315 (1964) ; Gauldin v. Virginia Winn-Dixie, Inc., 370 F.2d 167 (4th Cir. 1966).